DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

SAILAJA M. PAIDIPATY (NYBN 5160007)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    sailaja.paidipaty@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JOSE FRANKLIN RODRIGUEZ GARCIA<br><br>    Defendant. | **NO. 19-CR-0381-07 CRB**<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Judge: Hon. Charles R. Breyer<br>Sentencing Date: March 4, 2020<br>Time: 1:30 pm |

## I.   INTRODUCTION

Almost every day, Jose Franklin Rodriguez Garcia sold drugs – methamphetamine, crack, and heroin - in the Tenderloin neighborhood of San Francisco. He bought the drugs from Andy Reanos-Moreno, the head of a drug trafficking organization (DTO) that had over a dozen street-level drug dealers peddling drugs on the streets of San Francisco. In exchange for buying drugs from the DTO and reselling them, Rodriguez Garcia received Reanos-Moreno's help finding housing in the East Bay and

favorable drug prices.  Intercepted phone calls establish that Reanos-Moreno found Rodriguez Garcia and others a home on 91st Avenue (the "91st Avenue House") in Oakland.  Rodriguez Garcia and other dealers lived in the 91st Avenue House, bought drugs from Reanos-Moreno, and then traveled from the East Bay to the Tenderloin to resell those drugs.  In June 2019, officers searched the 91st Avenue House and seized fentanyl, methamphetamine, crack, and heroin.

And, in addition to buying narcotics from Reanos-Moreno, intercepted phone calls show that Rodriguez-Garcia also purchased drugs for resale from Isa Cruz, another mid-level drug supplier currently facing prosecution in this District.  *See United States v. Isa Cruz, et al*, No Cr 19-0343 CRB.

While there is no question that Rodriguez-Garcia is a street-level drug dealer rather than a drug supplier, he worked for an organized system that floods the Tenderloin with drugs on a daily basis.  He accepted housing from Reanos-Moreno, used multiple mid-level drug suppliers, and negotiated drug pricing with those suppliers.  His conduct was more than an occasional drug sale, but rather was part of a structured system of daily drug dealing.

Further, despite being previously deported from the United States, Rodriguez-Garcia re-entered the country and trafficked drugs.

In light of the nature of this organized crime and Rodriguez-Garcia's role, the need to deter drug dealing in this District, and the need to protect a community that is continually bombarded by drug trafficking, the government seeks the imposition of a 37-month sentence (the low-end of the Guidelines), followed by three years of supervised release, a $100 special assessment, and forfeiture of $2,570 seized from the 91st Avenue House in June 2019.

## II. SENTENCING GUIDELINES CALCULATIONS

As set forth in the parties' written plea agreement, the parties agree to the following Sentencing Guidelines calculation:

    a.    Base Offense Level, U.S.S.G. §§ 2D1.1(a)(5), (c)(6):    24
           (At least 100 KG but less than 400 KG of Converted Drug Weight)

    b.    Acceptance of Responsibility:    - 3

    c.    Adjusted Offense Level:    21

The base offense level reflects the quantity of drugs seized from the 91st Avenue House following the execution of a search warrant.

The parties agree that Rodriguez Garcia is a Criminal History Category I. The Guidelines range for imprisonment associated with adjusted offense level 21 and Criminal History Category I is 37 to 46 months.

### III.    GOVERNMENT'S SENTENCING RECOMMENDATION

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin by calculating the correct sentencing range under the Sentencing Guidelines. *Id.* The Guidelines are "the 'starting point and the initial benchmark,'" *United States v. Ellis*, 641 F.3d 411, 415 (9th Cir. 2011) (quoting *United States v. Kimbrough*, 552 U.S. 85, 108 (2007)), and the Court should "remain cognizant of them throughout the sentencing process." *United States v. Gall*, 552 U.S. 38, 50 n.6 (2007). After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93. Here, the most important considerations are the nature and circumstances of the offense, the need to afford adequate deterrence, and the protection of the public. 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(C).

### A.    Rodriguez-Garcia sold drugs as part of an organized network of street-level drug dealers.

The charges here stem from a federal wiretap investigation described in detail in the Criminal Complaint filed on August 31, 2019. *See* Dkt. 1, Compl. (originally filed under 3:19-71162 TSH). As described in the Complaint, the investigation uncovered an organized drug network where Reanos-Moreno housed street-level dealers in houses and apartments in the East Bay. *See* Dkt. 1, Compl. ¶¶ 17-26. On a near daily basis, the street-level dealers placed orders for drugs with Reanos-Moreno who then either dropped them off himself or sent a runner to make the drop-off. *Id.* Rodriguez-Garcia and the other street-level dealers then traveled to the Tenderloin to resell the drugs. *Id.*

Intercepted calls illustrate how the DTO functioned and Rodriguez-Garcia's role as a foot

soldier.[1]  For example, on January 24, 2019, Rodriguez Garcia called Reanos-Moreno and asked if he had any "product."  (Declaration of Sailaja M. Paidipaty ("Paidipaty Decl.") at Exhibit 1, Call 447.[2])  Reanos-Moreno indicated that he had "chiva" (code for heroin) and "perico" (code for cocaine), but not crystal (methamphetamine).  (*Id.*)  Rodriguez Garcia gave Reanos-Moreno his address in Oakland and Reanos-Moreno said he would be there soon.  (*Id.*)  Later that day, Reanos-Moreno dropped off the drugs discussed.  At approximately 7:03 p.m., Reanos-Moreno called and told Rodriguez Garcia that he was at the corner of "18th and 8th."  (Paidipaty Decl. at Exhibit 1, Call 457.)  At the end of the call, Rodriguez Garcia said he saw Reanos-Moreno.  (*Id.*)

The intercepted calls outline Rodriguez Garcia's relationship with Reanos-Moreno and indicate that Rodriguez Garcia left another drug trafficking organization to work with Reanos-Moreno.  In late January 2019, the two discussed Reanos-Moreno finding Rodriguez Garcia and others a place to live.  Reanos-Moreno said he had a house at 91st Avenue.  (Paidipaty Decl. at Exhibit 1, Call 288.)  Rodriguez Garcia responded that things had to be "serious."  (*Id.*)  The two discussed the size of the house and the price of rent.  (*Id.*)  Reanos-Moreno said that if Rodriguez Garcia needed "white," (cocaine) it would be "110," - meaning $110 for an eighth of an ounce - and "night" (heroin) would be "105" – meaning $105 for an eighth of an ounce.  (*Id.*)  Rodriguez-Garcia haggled a bit claiming that the woman he was currently working with was helping him pay for water and electricity.  (*Id.*)  Reanos-Moreno agreed to pay for electricity, but implied that he doesn't do that all the time.  (*Id.*)  Rodriguez Garcia assured Reanos-Moreno that he and the other street-level dealers interested in moving into the house would "buy a shit ton of work" – i.e. they'd buy a lot of drugs from Reanos-Moreno.  (*Id.*)

Throughout January 2019, Rodriguez Garcia continued buying drugs for resale from Reanos-Moreno (*See* Paidipaty Decl., Exhibit 1, Calls 494, 550, 608, 663.)  In early February 2019, Rodriguez Garcia and other street-level dealers moved into the 91st Avenue House.  (Paidipaty Decl., Exhibit 1, Call 1182.)  Reanos-Moreno agreed to help partially pay for the moving truck.  (*Id.*)  Rodriguez Garcia

---

[1] Agents determined that during the interception period, Rodriguez Garcia used a phone number ending in -1725.

[2] Almost all of the intercepted conversations recounted here were in the Spanish language.  The descriptions included are taken from line sheets prepared by fluent Spanish speaking monitors and produced to defense counsel in conjunction with the original recordings of the intercepted calls.

then asked if Reanos-Moreno had additional housing available for other street-level dealers who sold drugs near the Civic Center area by Golden Gate Avenue in San Francisco. (Paidipaty Decl., Exhibit 1, Call 1227.)

At times, Rodriguez Garcia complained about the quality of drugs provided by Reanos-Moreno. (Paidipaty Decl., Exhibit 1, Call 1227, 1238.) He also claimed that he was not making enough profit. (Paidipaty Decl., Exhibit 1, Calls 1322, 1362.)

But, for the next several months, Rodriguez-Garcia continued working for the Reanos-Moreno DTO. On June 19, 2019, shortly after seeing Reanos-Moreno's drug runner leave the 91st Avenue House with a suspected drug resupply, law enforcement executed a state search warrant at the house. Officers seized baggies of drugs from several rooms in the house as well as in a barbeque pit in the backyard. Dkt. 1, Compl. ¶¶ 207-217. Lab results to date indicate the presence of at least 10.44 grams of fentanyl, 25.03 grams of pure methamphetamine, 14.58 grams of heroin, and 18.54 grams of crack.

Despite being arrested on state charges following that seizure, Rodriguez Garcia remained undeterred. On July 31, 2019, officers saw Rodriguez Garcia sell drugs near Stevenson Street and 7th Street. When a DEA agent identified himself, Rodriguez Garcia threw a bag containing several small bindles of suspected crack to the ground and began to run away. Agents and officers ultimately caught and arrested Rodriguez Garcia pursuant to the arrest warrant related to this case.

**B.      Rodriguez Garcia purchased drugs from multiple mid-level suppliers.**

The underlying federal investigation identified multiple mid-level drug suppliers, such as Reanos-Moreno who operate in the Bay Area. In addition to working for the Reanos-Moreno DTO, intercepted calls show that Rodriguez Garcia at one time also worked for Isa Cruz, another supplier currently facing prosecution in this District. *See United States v. Isa Cruz*, No Cr 19-0343 CRB. Similar to his arrangement with Reanos-Moreno, Rodriguez Garcia called Cruz with his drug orders. For example, on January 27, 2019, Rodriguez Garcia asked Cruz to leave her two "white ones" (cocaine) and some "black ones" (heroin). (Paidipaty Decl., Exhibit 2, Call 927.)

Further, based on the context of the calls, it appears that Rodriguez Garcia previously lived in a drug house provided by Cruz. On January 20, 2019, Rodriguez Garcia told Cruz that she needed to

move him and the others because the apartments they were in currently were too "hot" because people had seen police in the area. (Paidipaty Decl., Exhibit 2, Call 572.) Cruz said she would start looking for another place. (*Id.*) It was around the same time that Rodriguez Garcia began speaking with Reanos-Moreno about working for the Reanos-Moreno DTO. In negotiating the terms of his arrangement with Reanos-Moreno, Rodriguez Garcia noted that "the woman" paid for utilities, suggesting that Cruz gave Rodriguez Garcia favorable housing terms when he worked for her. (Paidipaty Decl. at Exhibit 1, Call 288.)

### C. A prior deportation failed to deter Rodriguez Garcia from re-entering the United States and selling drugs.

Finally, as he admits in his plea agreement, Rodriguez Garcia lacks legal status. He was previously deported in 2016, but re-entered at some time afterward. Both a prior removal as well as his June 2019 arrest on state charges failed to deter him from drug trafficking. This Court should impose a sentence that recognizes Rodriguez Garcia's continued role in drug trafficking and the need for both specific and general deterrence. The public requires protection from the constant deluge of drugs sold daily in the Tenderloin.

## IV. CONCLUSION

The government recommends that the Court sentence Rodriguez Garcia to 37 months in prison, 3 years of supervised release, a $100 special assessment, and forfeiture of $2,570 in drug proceeds seized from the 91st Avenue House on June 2019.

DATED: February 26, 2020                                    Respectfully submitted,

                                                            DAVID L. ANDERSON
                                                            United States Attorney

                                                            _____/s/_____
                                                            SAILAJA M. PAIDIPATY
                                                            Assistant United States Attorney